**R. J. COULTER FUNERAL HOME, INC., et al.**

v.

**The CHEROKEE LIFE INSURANCE COMPANY, Inc. and The Cosmopolitan Funeral Homes, Inc.**

**Civ. A. No. 3678.**

United States District Court
E. D. Tennessee, S. D.

Jan. 12, 1963.

Van Derveer, Brown & Siener, Chattanooga, Tenn., for plaintiffs.

Farris, Evans & Evans, Nashville, Tenn., for Cherokee Life Ins. Co.

Boult, Hunt, Cummings & Conners, Nashville, Tenn., for Cosmopolitan Funeral Homes, Inc.

FRANK W. WILSON, District Judge.

This case is before the Court upon a motion for summary judgment filed separately on behalf of the two remaining defendants in the case, Cosmopolitan Funeral Homes, Inc. and The Cherokee Life Insurance Company. Each of the defendants has likewise filed a motion to dismiss the suit as a class action. The Cosmopolitan Funeral Homes, Inc., has filed a third motion designated as a motion to dismiss the suit of the plaintiff, T. H. Hayes & Son, Inc.

Before considering these motions it would be appropriate to review the present state of the record in this case.

This is a civil antitrust suit seeking treble damages and injunctive relief. The suit was filed as a class action by three named funeral directors, on their own behalf and on behalf of all similarly situated funeral directors in the State of Tennessee. Two of the named plaintiffs, R. J. Coulter Funeral Home, Inc., and Wann Funeral Home, Inc., operate funeral homes in Chattanooga, Tennessee, and the third named plaintiff, T. H. Hayes & Son, Inc., operates a funeral

home in Memphis, Tennessee. Originally the suit designated six parties as defendants, The National Burial Insurance Company, The National Funeral Home of Chattanooga, the National Mortuary Company (The National Funeral Home of Memphis, Tennessee), A. W. Wunderlich, The Cherokee Life Insurance Company, and The Cosmopolitan Funeral Homes, Inc. Upon motion, the suit has heretofore been dismissed as to the defendant, A. W. Wunderlich, and a consent order has heretofore entered disposing of all issues in the suit as between the plaintiffs upon the one hand and the defendants, The National Burial Insurance Company, The National Funeral Home of Chattanooga and The National Mortuary Company, on the other hand. The case remains pending at this time as between the plaintiffs and the defendants, The Cherokee Life Insurance Company and The Cosmopolitan Funeral Homes, Inc., only.

As to the two remaining defendants, the complaint alleges in substance that the defendant, The Cherokee Life Insurance Company, hereinafter referred to as "Cherokee," directly or indirectly owns a controlling interest in The Cosmopolitan Funeral Homes, Inc., hereinafter referred to as "Cosmopolitan," which tends to create a monopoly in the funeral home business, and that the said defendants have engaged in a conspiracy to suppress competition and create a monopoly in the funeral home business. It is alleged (1) that Cherokee sells a type of burial insurance and seeks to control or direct the service of the policy so as to refer all policyholders to Cosmopolitan, (2) that Cherokee gives financial support to Cosmopolitan so as to place Cosmopolitan in a superior competitive position, (3) that Cherokee is extremely slow and dilatory in making settlement on a policy when the funeral service is performed by a funeral director other than Cosmopolitan, (4) that Cherokee seeks to obtain servicing of its policies through an independent funeral director only in areas where Cosmopolitan does not operate and seeks to obtain such servicing at less than cash value by threatening otherwise to have all policyholders directed to another funeral director, and (5) that by reason of Cherokee's financial support placing Cosmopolitan in a superior competitive position, they are able to purchase funeral supplies at a greater discount than their competitors. It is further alleged that as a result of these acts of the defendants the defendants have gained a virtual monopoly of all funeral business in Tennessee and eliminated competition in one or more of the major cities of the State.

The defendants, Cherokee and Cosmopolitan, have heretofore filed various motions, including a motion to dismiss for insufficiency of the allegations in the complaint, and including a motion to sever the cause of action alleged against the defendants, Cherokee and Cosmopolitan, from the cause of action alleged against other defendants. The motion to sever had been sustained prior to the consent order disposing of the issues as to the other defendants, thus recognizing that the cause of action alleged against the defendants, Cherokee and Cosmopolitan, was substantially distinct and separate from the cause of action alleged against the other defendants. The motions to dismiss were in all other respects overruled.

Turning the Court's attention first to the motions for summary judgment, it appears that the motions are substantially identical. Each motion alleges (1) that the matters complained of do not directly or substantially affect interstate commerce so that the Court is without jurisdiction under the Federal Antitrust Laws, (2) that the action complained of consists of matters regulated or controlled by laws of the State of Tennessee and that under the McCarran Act, 15 U.S.C.A. § 1012(a) (b), the defendants are therefore exempt from the Federal Antitrust Laws, (3) that the plaintiffs fail to show any damage directly and proximately resulting from the alleged antitrust violations, and (4) that the

plaintiffs come into the court with un-clean hands and are therefore not entitled to equitable relief. The record relied upon in support of the motions for summary judgment consists of the discovery depositions of the plaintiffs, the discovery depositions of officers of the defendants heretofore taken, and affidavits filed on behalf of the plaintiff. Full opportunity has been extended for the parties to take discovery or present their case in support of or opposition to the motion.

The law with reference to the jurisdictional problem raised by the motion for summary judgment appears to be well settled. *There are numerous cases holding that in order for federal antitrust jurisdiction to be sustained the activity complained of must have a direct and substantial effect upon interstate commerce.* Mandeville Farms v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328; United States v. Starlight Drive-In, Inc., 7 Cir., 204 F. 2d 419; Roofire Alarm Co. v. Royal Indemnity Co., D.C., 202 F.Supp. 166; United States v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978. Even though interstate commerce is affected, if the effect is merely incidental or remote or inconsequential, no action will lie under the Federal Antitrust Laws. Sears-Roebuck & Co. v. Blade, D.C., 110 F.Supp. 96; Federal Base Ball Club of Baltimore v. National League of Professional Baseball Clubs, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898. It is not sufficient merely that the plaintiff be engaged in interstate commerce, but it is rather required that the conduct of the defendant complained of affect the interstate commerce aspects of the plaintiffs' businesses. Monument Bowl, Inc. v. Northern California Bowling Proprietors' Association, D. C., 197 F.Supp. 208; Page v. Work, 9 Cir., 290 F.2d 323.

The problem presented by the defendants' motions for summary judgment upon the issue of jurisdiction therefore resolves itself into a study of the rather voluminous record to determine what facts are in dispute and what facts are not in dispute and then to determine whether the undisputed facts are sufficient and are of such a nature as to warrant dismissal of the plaintiffs' cause of action summarily. Some reference is made in the briefs to particular items of testimony in the record, but no attempt has been made in the brief of any party to fully analyze the record for this purpose. Although very substantial portions of the depositions of record relate only to the complaints of the plaintiffs against the National group, this testimony is in no wise separated in the record from testimony relating to Cherokee and Cosmopolitan and it therefore becomes necessary to refer to and analyze the entire record.

Before undertaking to make any summary of the disputed or undisputed facts in the record, it should be pointed out that although this suit was initially filed as a class action on behalf of all funeral directors in the State of Tennessee "similarly situated," no additional parties plaintiff have sought to join in the lawsuit although almost two years have now elapsed since the filing of the suit. *From the depositions it appears that the existence of the suit has been a matter of widespread interest and knowledge among funeral directors, of whom the plaintiffs estimate there are between 200 and 350 in the State. The Court can therefore only conclude that no additional members of the alleged class desire or propose to intervene. At most this action could have been only a spurious class action, for it is obvious that any damages sustained by the alleged class would be individual, and not joint.* Moreover, it is admitted by the plaintiffs that as to the lawsuit against Cherokee and Cosmopolitan, the named plaintiff, T. C. Hays & Son, is not a member of the present class, inasmuch as the said plaintiff and the defendant, Cosmopolitan, voluntarily limit their funeral business to persons of the colored

and white races respectively, and are therefore not in competition. Although the deposition of Mr. Hays is in the record, it relates solely to the activities of the National group, and makes no mention of any activities on the part of Cherokee or Cosmopolitan. On the other hand, both Cherokee and Cosmopolitan deny any activity that might constitute a violation of the federal antitrust laws as to the plaintiff Hays.

■■ It would therefore appear to the Court that the motion of the defendant, Cosmopolitan, to dismiss the action of the plaintiff, T. C. Hays & Son, Inc., should be treated as a motion for summary judgment and should be sustained. Persons suing either for damages or on behalf of a class must show that they are the type to be directly injured and not only indirectly. Steiner v. 20th Century Fox Film Corporation, C.C.A. 9, 232 F.2d 190. No similar motion is made on behalf of the defendant, Cherokee, with reference to the plaintiff, Hays, nor does the motion for summary judgment of either defendant seek dismissal for lack of evidence of an antitrust violation. Rather, the motions for summary judgment are limited to a denial of *evidence* of jurisdiction, and a denial of an *allegation* of an antitrust violation. For the present the dismissal of the suit on behalf of Hays will be limited only to the suit against Cosmopolitan. With the suit remaining only as to the plaintiffs, Coulter and Wann, insofar as Cosmopolitan is concerned, and as to the plaintiffs, Coulter, Wann and Hays, insofar as Cherokee is concerned, and with Hays admittedly not being a member of the class to which Coulter and Wann are alleged to belong, the Court is of the opinion that the named plaintiffs are not sufficiently representative of any class and that there is insufficient basis in the record for the existence of either a true or a spurious class action so that the motion of each defendant to dismiss the class action aspect of this lawsuit should likewise be sustained. Weeks, et al. v. Baraco Oil Co., C.C.A. 7, 125 F.2d 84.

Returning now to the record before the Court upon the defendants' motions for summary judgment, it would appear that the following statement of facts is undisputed in the record:

The plaintiffs, Coulter and Wann, are each funeral directors maintaining funeral homes in Chattanooga, Hamilton County, Tennessee. They are each licensed to engage in the said business in Tennessee and in no other state. They each maintain and operate a funeral home in Chattanooga, Tennessee and in no other city, county or state, with Wann operating at one location, and Coulter operating at two locations. On behalf of the plaintiff, Wann, it is represented by affidavit that "although most of their work is done at their funeral home on McCallie Avenue in Chattanooga, they often pick up bodies and occasionally conduct services in Georgia." On behalf of the plaintiff, Coulter, it is represented by affidavit that "most of the business of that funeral home is conducted in Tennessee, but that 15 or 20 times a year it is necessary to pick up a body in Georgia or Alabama and in such a case either all or a portion of the funeral may be conducted in Georgia or Alabama." Although the plaintiff, Wann, was unable to identify any particular funeral he claimed to have lost due to the activities of either of the defendants, the plaintiff, Coulter, did identify two funerals which he felt he might otherwise have gotten. It appears from the record that Wann conducts a total of 120 to 150 funerals per year, but the numerical volume of Coulter's business does not anywhere appear in the record and no comparison can be made of the intrastate and interstate volume of his business.

The plaintiff, T. C. Hays & Son, Inc., operates a funeral home in Memphis, Tennessee. As stated above it is conceded by counsel upon both sides that, although Cosmopolitan operates a funeral home in Memphis, Hays and Cosmopolitan are not in competition as they voluntarily limit their funeral business to persons of different races. As like-

wise stated above, there is no evidence in the record of any activities on the part of either Cherokee or Cosmopolitan that in any way affects the business of the plaintiff, Hays.

The defendant, Cosmopolitan Funeral Homes, Inc., presently operates two funeral homes, one located in Nashville, Davidson County, Tennessee, and the other located in Memphis, Shelby County, Tennessee. From 1941 until April of 1959, Cosmopolitan also operated a funeral home in Chattanooga, Tennessee, but on the latter date the funeral home at Chattanooga was taken by condemnation proceedings for public purposes and the business was closed. Cosmopolitan has operated no funeral home in Chattanooga since April 1959.

The defendant, Cherokee Life Insurance Company, is a wholly owned subsidiary of Cherokee Insurance Company, which is engaged in the fire and casualty insurance business, was chartered in Tennessee and began business in this State in 1946. The defendant subsidiary, Cherokee Life Insurance Company, was chartered in Tennessee in 1956 but did not begin doing business until October 1, 1959, when it acquired the assets and assumed the liabilities of Cosmopolitan Life Insurance Company. Cherokee has never owned any interest in Cosmopoli-

tan Funeral Homes, Inc. Cosmopolitan Life Insurance Company did at one time own stock in Cosmopolitan Funeral Homes, Inc., but had disposed of this stock ownership in the funeral home prior to Cherokee's acquiring its assets.[1] The only financial dealings between the defendants reflected in the record is a commitment by Cherokee to make a $200,000 loan to the Cosmopolitan Funeral Home at Memphis for improvements and a $150,000 mortgage loan from Cherokee to Cosmopolitan upon which a balance remains due and which arose from the sale by Cherokee of real estate in Nashville to the funeral home property, which interest was formerly owned by Cosmopolitan Life Insurance Company and acquired by Cherokee as one of the assets of Cosmopolitan Life Insurance Company. In addition, a contract exists between Cherokee and Cosmopolitan Funeral Homes for the latter to service, in the Nashville and Memphis areas, the policies written prior to 1955 by Cosmopolitan Life Insurance Company, which policies granted the policyholder an option to demand either money or funeral equipment and services as described in the policy. The writing of this type of policy was prohibited by legislation in Tennessee from and after 1955. All policies written after 1955 were payable in cash only. Cherokee

---

1. In this respect, the record reflects the following series of transactions. About 1956 an investment company known as Allen & Company acquired by purchase from public stockholders approximately 90% of the stock of both Cosmopolitan Funeral Homes, Inc. and Cosmopolitan Life Insurance Company, both of which companies had operated for a number of years theretofore. The capital stock of the funeral home thus acquired was then donated by Allen & Company to Cosmopolitan Life Insurance Company, thus increasing the value of the insurance company shares, and then Allen & Company sold to the public its holdings of Cosmopolitan Life Insurance Company stock. Thereafter in August 1958 the stock of Cosmopolitan Funeral Homes, Inc. was spun out of Cosmopolitan Life Insurance Company and given to the stockholders of Cosmopolitan Life Insurance Company at the ratio of one share of funeral home stock for each 52 shares of life insurance stock. On September 30, 1959, the defendant, Cherokee Life Insurance Company, acquired all of the assets and assumed the liabilities of Cosmopolitan Life Insurance Company and in return the former stockholders of Cosmopolitan Life Insurance Company exchanged their stock for stock in Cherokee Insurance Company. As a result of these series of transactions, Cherokee Life Insurance Company acquired the assets and assumed the liabilities of Cosmopolitan Life Insurance Company, but only after Cosmopolitan Life Insurance Company had disposed of its interest in Cosmopolitan Funeral Homes, so that Cherokee does not now have and has never held any ownership in Cosmopolitan Funeral Homes.

likewise has had agreements at one time or another with each of the plaintiffs for servicing these pre-1955 policies in the Chattanooga area.

There is no evidence in the record from which the Court can determine whether the activities of Cherokee in any way affect the interstate aspects of the plaintiffs' businesses, much less whether that effect is direct and substantial. The only thing that the record reflects in this respect is that Cherokee is licensed to do business in Tennessee, Georgia and Arkansas. What states Cherokee actually does business in other than Tennessee does not anywhere appear in the record. Likewise, neither does it appear that the activities of Cherokee either do or do not affect the interstate aspects of the plaintiffs' businesses, either directly or indirectly, substantially or unsubstantially, consequentially or inconsequentially. Upon the other hand, the evidence is undisputed that Cosmopolitan could not have been a party to any conspiracy with Cherokee to commit the alleged violations of the antitrust laws affecting the business of these plaintiffs for it is undisputed in the record that Cosmopolitan has never competed with the plaintiff, Hays, and that Cosmopolitan ceased doing business in Chattanooga in April 1959, while Cherokee did not begin doing business anywhere until October 1, 1959. Cosmopolitan could not have been a party with Cherokee to any conspiracy against the plaintiffs, Coulter and Wann. The complaint alleges a conspiracy to violate sections one and two of the antitrust laws. Cosmopolitan is charged with conspiring only with Cherokee. Cherokee is charged with conspiring with Cosmopolitan "and others." It would therefore appear that there is no basis in the record upon which Cosmopolitan might be found to have violated the antitrust laws with respect to these plaintiffs.

The situation is not the same with Cherokee under the present state of the record for it is charged that Cherokee conspired with "others" to violate sections one and two of the antitrust laws with respect to each of the three named plaintiffs. As stated above in discussing the motions relating to the dismissal of the class action, there is no evidence of any antitrust violation by Cherokee with respect to Hays, but rather the record reflects only Cherokee's denial, so that a summary dismissal might appear to be in order as to Hays. The record is not the same as regards Coulter and Wann's suit against Cherokee, both of which plaintiffs testify as to matters which they contend are antitrust violations on the part of Cherokee. In the present state of the record the Court cannot say that no genuine issue exists in this regard.

A further problem remains in that neither Cosmopolitan nor Cherokee has filed any motion for summary judgment on the ground that no genuine issue exists as to their having violated the antitrust laws with respect to Coulter and Wann. However, since as found by the Court no genuine issue exists as to a violation by Cosmopolitan with regard to Coulter and Wann under the allegations in the complaint, there could be no jurisdiction under the antitrust laws as to this defendant, and its motion for summary judgment should be sustained upon this ground and the suit of Coulter and Wann dismissed as to Cosmopolitan. Likewise, since, as found by the Court, no genuine issue as to violations by Cherokee affecting the plaintiff, Hays, exists, there could be no jurisdiction under the antitrust laws as between Hays and Cherokee and Cherokee's motion should be sustained upon this ground as to this plaintiff.

Finally, considering the further grounds of the motion of Cherokee with respect to the complained of actions being regulated by state law and therefore excluded from the Federal Antitrust Laws by the McCarran Act, with respect to the lack of damages and with respect to unclean hands on the part of the plain-

tiffs, the evidence appears insufficiently developed at this time on these matters for the Court to say that the plaintiffs' actions should be summarily dismissed.

In accordance with the Opinion, an Order will enter sustaining the motion of each defendant to dismiss the class aspect issue of this lawsuit, sustaining the motion of Cosmopolitan to dismiss the suit of the plaintiff, Hays, sustaining the motion of Cosmopolitan for summary judgment as to the plaintiffs, Coulter and Wann, upon the ground of lack of jurisdiction, and sustaining the motion of Cherokee for summary judgment as to the plaintiff, Hays, upon the ground of lack of jurisdiction. The action will remain pending as between the plaintiffs, Coulter and Wann, and the defendant, Cherokee, only. This Opinion will be without prejudice to the right of Cherokee to file additional motions or to renew its motions upon further development of the facts. An Order will enter accordingly.

Motion to reconsider overruled March 29, 1963.