**Alvin WILSON, Executor of the Estate of C. D. Davis, Deceased,**

v.

**R. Jacques T. DU PONT and James P. Roszel.**

**Civ. A. No. 28542.**

United States District Court
E. D. Pennsylvania.

Feb. 16, 1962.

George S. Forde, Jr., Philadelphia, Pa., for plaintiff.

Henry T. Reath, Philadelphia, Pa., for defendant duPont.

VAN DUSEN, District Judge.

This case is now before the court on defendant duPont's Motion For Summary Judgment (Document No. 40) and plaintiff's Motion For Leave To Amend the Complaint (Document No. 41).

The Complaint is based on a promissory judgment note dated April 9, 1959· (exhibit to Document No. 1), payable to the Farmers Bank of the State of Delaware, which was executed by C. D. Davis, the original plaintiff, and the defendants, duPont and Roszel.[1]   The Complaint states that the defendants, who are being sued individually and in a partnership capacity, have asserted to the holder

1. Davis died in April 1961 and the executor of his estate has been substituted as party plaintiff.  Roszel, a citizen of Kentucky, has not been served in this action.

of the note and to Davis that they signed only for the accommodation of Davis and that, as between the makers, the entire note should be paid by plaintiff, although they did not deny liability to the Bank. It is plaintiff's contention that the note is the joint and several obligation of Davis' estate and defendants; that defendants were not accommodation makers; and that, although the law would, in the absence of an agreement between the parties, impose a duty to pay the note in equal amounts, there was an agreement whereby Davis would be responsible for paying one-half of the amount of the note and defendants would pay the other one-half. The bank was paid $25,000. of the principal due and $5,339.08 of interest due on said note by Davis, to prevent filing of suit by the bank based on non-payment of the note. In this action, plaintiff sues to recover one-half of the amounts paid by Davis and for a declaratory judgment stating that defendants are obligated individually and as a partnership to pay one-half of the said note. Defendant duPont's Answer (Document No. 5) alleges that he signed on the condition that Davis would be the sole obligor. In his counterclaim (Document No. 24), he elaborates on this defense and sets forth his version of the circumstances surrounding the issuing of the note and asks for the return of the collateral he put up to secure the loan.[2] The reply to the counterclaim (Document No. 27) denied almost all the allegations contained therein, except as to paragraph 1 that Davis was president of Mid-Tex in 1959 (also averring that duPont and Roszel represented that they owned controlling interest in Mid-Tex) and as to paragraph 8 that the proceeds of the loan were used as earnest money for an agreement to purchase stock of Wichita River Oil Co. for the mutual benefit of, and pursuant to an agreement among and between, Davis and defendants and that the earnest money was forfeited when the transaction could not be completed. Defendant duPont then filed a Motion For Summary Judgment in his favor on the counterclaim and asking for dismissal, stating that there are no genuine issues as to material facts (Document No. 40), and plaintiff moved for leave to amend the Complaint by adding paragraphs 8 to 11 (Document No. 41). In the latter motion, it is alleged that the note was given in connection with the efforts of all parties to get the Wichita stock and merge or consolidate Mid-Tex and Wichita. As part of these efforts, Davis was elected president of Mid-Tex and, to further Mid-Tex business, he guaranteed certain accounts owing by Mid-Tex incurred in connection with the development of its properties. The proposed amendment further alleges that duPont and Roszel caused Davis to be removed as president but that he still remained the guarantor until August 14, 1959, when an agreement was signed under the terms of which the defendants agreed to pay the accounts guaranteed by Davis. A claim is made to recover the amounts paid by Davis on the accounts which

2.  The counterclaim states that Davis represented that he was about to purchase a controlling interest in Wichita River Oil Co. and then merge that company with Mid-Tex Gas Co., of which duPont was a substantial stockholder, and that he needed the money to make the downpayment to bind the purchase of the Wichita stock. Defendant duPont was to put up the collateral to secure the loan, then Davis was to repay the loan, release the collateral and substitute a new note of Mid-Tex secured by a deed of trust. After the merger, the defendants were to be able to exchange stock for an equal interest in the merged company. He also states that he agreed to put up the collateral and endorse the note which was signed by Davis on the express condition that Davis, the alleged maker, would be the sole obligor. Davis allegedly defaulted under the stock purchase agreement and forfeited the $100,000. After stating again that his only obligation on the note was as an accommodation endorser and that Davis was the sole obligor, duPont claims that he is entitled to the return of his $125,000. collateral.

were assumed by defendants under that agreement (the letter contract is attached to Document No. 41). Defendant duPont filed an Answer to the Motion For Leave to Amend the Complaint, alleging that the four added paragraphs, which he describes as "the additional count," are void as being against public policy and are violative of the Federal Bankruptcy Act (see Document No. 42).

Defendant's Motion For Summary Judgment (Document No. 40) and plaintiff's Motion For Leave To Amend The Complaint (Document No. 41) are presently before the court.

*Motion For Summary Judgment*

██ The motion of defendant duPont for summary judgment will not be granted. The record in this case shows that there are genuine issues present as to facts material to the disposition of this case. Although plaintiff's argument that duPont's depositions cannot be used in support of his motion because of the death of Davis, which occurred after they were taken,[3] is rejected [cf. Hart v. Friedman, 29 F.R.D. 2 (E.D.Pa.1961)], his position that the motion should not be granted is substantiated by the record.

The Complaint alleges that Davis, duPont and Roszel signed the note as joint obligors. The note itself shows that the parties mentioned were jointly and severally liable on that instrument. The deposition of Davis (Document No. 32) and that of duPont (Document No. 36) contain contradictory evidence concerning the circumstances of the transactions between the parties, the knowledge of each as to the other's interest in the companies involved, the reliance by the bank on Davis' financial statement before the loan was granted, as well as other important matters. Defendant duPont has not shown that the record is devoid of genuine issues as to material facts and that he is entitled to judgment as a matter of law.[4] In this case there are many factual differences between the versions of the defendant duPont and plaintiff on the issue which is most important to the determination of this case—i. e., whether or not the note signed by Davis, duPont and Roszel was, in fact, signed by duPont merely for accommodation purposes. Davis did not relinquish his rights as against duPont and Roszel by paying part of the debt due to the bank, as evidenced by the correspondence at the time it was paid (see Exhibits D–7 and D–14 to Document No. 32).

██ A motion for summary judgment may not be granted if there are any disputed issues of fact involved. See, e. g., Kress, Dunlap & Lane, Ltd. v. Downing, 286 F.2d 212 (3rd Cir. 1960); Krieger v. Ownership Corporation, 270 F.2d 265 (3rd Cir. 1959).[5] The record in this case does not demonstrate that there is no dispute as to a genuine issue of fact. Defendant duPont has not sustained his burden of proof and his motion must be denied.

*Motion For Leave To Amend The Complaint*

The proposed amendment of the Complaint concerns matters arising from the

---

3. See Document No. 53.

4. For a comparison of the depositions of duPont and Davis as to certain facts concerning this transaction, see pp. 2–4 of plaintiff's Supplemental Brief Contra Defendant's Motion for Summary Judgment (Document No. 54). See, also, pp. 87, 104, 109, 123, 139–141, 144–5, 150–1, 154–5 and 162–5 of duPont deposition (Document No. 36).

5. There are instances where, even if the factual situation is admitted, a motion for summary judgment cannot be granted. In Bragen v. Hudson County News Company, 278 F.2d 615 (3rd Cir. 1960), the court stated at page 618:

"The impact of particular circumstances upon an inference arising from an admittedly existing factual situation calls for a factual determination which is the function of the trier of the facts and not that of the court in disposing of a motion for summary judgment."

business relationship of Davis, duPont and Roszel and is related to the overall plans to merge Wichita and Mid-Tex. While president of Mid-Tex, certain accounts owed by Mid-Tex were guaranteed by Davis. The letter contract (Exhibit A to Document No. 41), on which the proposed amendment of the Complaint is based, states that duPont and Roszel agree to pay the accounts so guaranteed by Davis. Davis having paid some of the accounts which were assumed by defendants, his estate sues to recover the amounts paid. The position of defendant duPont is that the letter contract is fraudulent and, therefore, the cause of action based thereon should not be permitted to be filed.

F.R.Civ.P. 15(a), 28 U.S.C. states that leave to amend shall be freely given when justice so requires. It is defendant duPont's position that this amendment will avail the plaintiff nothing because of the consideration given for the contract on which it is based and that, therefore, the court should not allow it.[6] In opposition to defendant's position are cases such as Gabaree v. Jay Ship Maintenance Corporation, 166 F.Supp. 625, 627 (E.D. Pa.1958), which held that a matter closely identified with the merits of the case should not be considered on a motion to amend.[7] See, also, Snyder v. Dravo Corporation, 6 F.R.D. 546, 551–553 (W.D. Pa.1947).

In this case, the Motion For Leave to Amend should be granted. The contentions of defendant that the letter contract was against public policy and federal law and is, therefore, void, are not sufficient to prevent this motion's being granted. The defendant maintains that the consideration for the letter contract was Davis' agreement not to oppose a motion to dismiss bankruptcy proceedings against Mid-Tex, ignoring the other consideration stated in the contract— namely, the assignment of subrogation rights on the mechanic's lien from Davis to duPont and Roszel. Also, the allegations that certain statements made by counsel for the creditors in the bankruptcy proceeding, who was also counsel for Davis, were improper and were misleading to the bankruptcy court are directly refuted by the affidavits of the referee in bankruptcy, counsel for Mid-Tex Gas Co. in that bankruptcy action, and counsel for the petitioning creditors in that action (see Exhibits K, L and M attached to Document No. 47). It is also not clear that, even if the allegations contained in the Reply to the Motion For Leave To Amend (Document No. 42) were completely accurate, the amendment would present a claim which cannot be enforced because it is void as being against public policy and in violation of the Federal Bankruptcy Act.[8] In the interest of justice, the amendment of this Complaint will be allowed.

The briefs, memoranda and letters of counsel, most of which have been filed between the hearing on the above Motions held last October and December 12, 1961, have been placed in the Clerk's file as Documents Nos. 47 to 55.

---

6. Leave to amend can be denied where the amendment is subject to a valid motion to dismiss. 3 Moore, Federal Practice, § 15.08, p. 834 (2nd Ed. 1948); Eisenmann v. Gould-National Batteries, Inc., 169 F.Supp. 862 (E.D.Pa.1958). In Stephens v. Reed, 121 F.2d 696, 699 3rd Cir. 1941), the court stated that it was not an abuse of discretion to refuse to amend when what was refused would avail the offeror nothing if allowed.

7. In the Gabaree case, the amendment proposed was to include a claim under the theory of unseaworthiness; the defendant argued that under the facts alleged, plaintiff, as a matter of law, was not entitled to maintain an action under the unseaworthy theory regardless of the timeliness of the plea.

8. See the persuasive arguments and authority set forth at pp. 7–15 of Document No. 47.