**In The Matter of the COMPLAINT OF ANTHONY J. BERTUCCI CONSTRUCTION CO., INC., etc.**

**Civ. A. No. 90–4603.**

United States District Court, E.D. Louisiana.

Aug. 7, 1991.

Randolph J. Waits, John F. Emmett, William S. Culver, Jr., Emmett, Cobb, Waits & Kessenich, New Orleans, La., for petitioner, Anthony J. Bertucci Co., Inc.

Lawrence D. Wiedemann, W. Lloyd Bowers, Wiedemann & Wiedemann, New Orleans, La., for intervenor Wiedemann & Wiedemann.

Kerry A. Kilburn, intervenor, pro se.

Eldon E. Fallon, Stevan C. Dittman, Gainsburgh, Benjamin, Fallon, David & Ates, New Orleans, La., for claimants Tiffany Nichole Pugh, Patricia Ann Callendar, John Edward Callendar and Charitie Smith Pugh.

Charitie Smith Pugh, pro se.

### ORDER AND REASONS

FELDMAN, District Judge.

On June 18, 1990, Eddie W. Pugh, Jr., a deckhand employed by Anthony J. Bertucci Construction Company, drowned when he dove into the Intracoastal Waterway along the Port Allen/Morgan City route to go swimming.

On that same day, Bertucci Construction instituted this proceeding as owner of the M/V MISS MARGARET, a towing vessel, seeking to limit its liability to the value of the vessel and her pending freight on the day in question.

Claims have subsequently been filed by Patricia Ann and Johnny Edward Callendar, both individually and as legal guardians of their minor granddaughter, Tiffany Nicole Pugh. Charitie Smith Pugh, Tiffany's mother, also filed a claim both individually and on behalf of the child. These claimants seek pecuniary damages against the plaintiff for the death of Mr. Pugh, alleging that he was a seaman and member of the crew of the M/V MISS MARGARET when he took his fatal dive.

Charitie Pugh is the biological mother of the child Tiffany. However, plaintiff contends that Charitie's husband, the decedent, was not the biological father. Charitie testified that when she married Eddie on November 22, 1989, she was five months pregnant with a child fathered by Rushy Lee Alexander. But when Tiffany was born on April 19, 1990, Eddie signed the birth certificate that listed him as the father, and he raised the child as his own.

The couple were living in Pearl River County, Mississippi at the time. Mrs. Patricia Callendar is Charitie's mother, and she and her husband presently have custody of Tiffany.

Under the Jones Act, damages for a seaman's wrongful death benefit the surviving "widow ... and children." If there are none, the benefits go to the decedent's parents or to his next of kin who are dependent upon the decedent.[1]

Plaintiff argues that because Tiffany Pugh is illegitimate, and was not fathered by the decedent, she is not a child within the meaning of the Act, and thus no damages should be awarded to the Callendars for her benefit.

Although Charitie Pugh contends that Eddie Pugh was not the biological father of the child, she was born five months into Eddie and Charitie's marriage, and Eddie signed the birth certificate as parent. Tiffany's mother states that between the time the child was born on April 19, 1990 and Eddie's death, Eddie loved and supported the child as his own. Thus, claimants contends that at the very least, Eddie was *in loco parentis* with Tiffany.

■ Case law clearly states that "illegitimate children qualify as beneficiaries under the Jones Act." *Hassan v. A.M. Landry & Son, Inc.*, 321 F.2d 570, 572 (5 Cir.1963); *Hebert v. Petroleum Pipe Inspectors, Inc.*, 396 F.2d 237 (5 Cir.1968). In *Hassan*, the Court dismissed even a discussion of whether the children of the deceased's wife, whom he had not fathered,

---

**1.** *See* 45 U.S.C. § 51. Under the Jones Act, this provision of FELA is adopted by reference to apply to injured seamen.

were "children" within the meaning of the Jone's Act. *Id.*

Because federal law does not specifically define "children" under the Jones Act, in certain cases state law has been held to be determinative on the issue of who is a child under the Act. *Murphy v. Houma Well Service,* 409 F.2d 804, 811 (5 Cir.1969).

▇▇▇ Although state law may serve to define "child," [2] the Supreme Court's mandate against discriminating against dependent children based upon their legitimacy, requires that state law only define the extent to which a child in Tiffany's position is or is not a dependent or is entitled to benefits. *Cf. Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 1510, 20 L.Ed.2d 436 (1968); *Hebert,* 396 F.2d 237; *but see Murphy v. Houma Well Service,* 409 F.2d 804 (child was legitimate under state law thus entitled to wrongful death benefits under the Jones Act).[3]

▇▇ Defendants also argue that the Callendars have no individual right to recover for wrongful death benefits. Claimants have not opposed this portion of the partial summary judgment motion. Under the Jones Act, wrongful death benefits may only be awarded to the "next of kin," if neither the seaman's widow, children or parents are able to recover (which is not the situation in this case). *See* 45 U.S.C. § 51. Thus, the Callendars have no right

to recover benefits for themselves for the death of Eddie Pugh under the Jones Act.

Plaintiff's Motion for Summary Judgment is DENIED as to the representative claims on behalf of Tiffany Nicole Pugh, and GRANTED as to the individual claims of the Callendars.[4]

---

2. Plaintiff argues that under state law, Tiffany is Eddie's child, or at least is heavily presumed to be.

Under Louisiana law, "a man who marries a pregnant woman who knows that she is pregnant at the time of the marriage cannot disavow the paternity of such child born of such pregnancy." La.Civ.Code Art. 188. There has been no formal attempt made to disavow Eddie's paternity. *See* Articles 189–190. Thus, under Louisiana law, Tiffany is deemed Eddie's legitimate daughter.

Plaintiff argues that Mississippi law should apply because the family was domiciled there. But in Mississippi the law "has long presumed a child born during the course of a marriage to have been fathered by the husband." *In re Karenina,* 526 So.2d 518 (Miss.1988). "... A child born in wedlock should not be branded as illegitimate except in those cases where the proof is so strong that there is no reasonable doubt that the husband is not the father. Noth-

ing less will suffice." *Brabham v. Brabham,* 483 So.2d 341, 342 (Miss.1986).

Thus even under state law, Eddie is presumed to be the father, and Tiffany his legitimate daughter, unless there is substantial proof to the contrary. The question of whether Tiffany is even illegitimate, is a question of fact for the jury.

3. Under Louisiana Workmen's Compensation Act, an illegitimate child, who is dependent member of the deceased parent's family, may recover compensation for his death. *Levy,* 88 S.Ct. 1511 n. 7.

4. Although much has been written on the issue of the child's status, the Court also notes that Bertucci's statement that Eddie Pugh drowned after he dove into the Intracoastal Waterway for a swim is not questioned in the opposition papers. If that fact holds up at trial, one can only wonder whether so much focus on the status of the child will produce a commensurate reward.